# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ACME TRUCK LINE, INC., § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION H-13-3152 |
| § | | |
| JEAN MAHONEY GARDNER, § | | |
| SCHINDEL FARMAN LIPSIUS § | | |
| GARDNER & RABINOVICH, L.L.P., & § | | |
| HILL RIVKINS, L.L.P., § | | |
| § | | |
| *Defendants*. § | | |

## MEMORANDUM OPINION & ORDER

Pending before the court is the amended motion to dismiss filed by defendants Jean Mahoney Gardner, Schindel Farman Lipsius Gardner & Rabinovich, L.L.P., and Hill Rivkins, L.L.P. (collectively "defendants"). Dkt. 26. After considering the motion, response, reply, second amended complaint, and applicable law, the court is of the opinion that the motion should be DENIED.

## I. BACKGROUND

This suit arises out of an insurance claim by plaintiff Acme Truck Line, Inc. ("Acme") relating to a cargo loss. According to Acme's second amended complaint, on June 20, 2009, a shipment of cell phones being transported by Acme was allegedly lost. Dkt. 23, p. 2. Acme reported the claim to its insurance carrier, Navigators Insurance Company ("Navigators"), seeking defense and indemnity for the loss. *Id.* at 3. On July 1, 2009, Navigators engaged Jean Mahoney Gardner ("Gardner") of the Schindel Farman Lipsius Gardner & Rabinovich law firm as counsel on the cargo loss. *Id.* On or about June 25, 2010, Verizon, the cargo owner, brought suit against Acme, CEVA, and American Eagle in state court. *Id.* Additionally, CEVA filed cross-claims against Acme

seeking indemnification or contribution from Acme if CEVA was to be found liable for the cargo loss. *Id.* From July 2009 to January 2011, Gardner was the sole attorney in the state court lawsuit acting on behalf of Acme. *Id*. During this time, Gardner and the Schindel law firm were provided documents by Acme and sent documents on behalf of Acme to third parties. *Id*. In addition to general preparation for litigation, Gardner also entered into an agreement with Verizon's counsel at the Hill Rivkins law firm for an extension of time to file Acme's answer. *Id*.

In January 2011, subject to a reservation of rights, Navigators notified Acme that it would provide defense and indemnity up to the policy limits. *Id.* at 4. With the consent of Acme, David Frock was appointed as Acme's defense counsel. *Id*. Nevertheless, communications between Acme and attorney Gardner and the Schindel law firm did not cease. *Id*. Documents and defense strategies continued to be exchanged between Acme and Gardner and Frock had to obtain approval from Gardner before serving and filing documents. *Id*. at 4-5. In March 2011, Gardner began settlement discussions with Verizon and its counsel at the law firm of Hill Rivkins. *Id*. at 5. As part of the settlement, Acme specifically requested indemnification from Verizon in order to protect Acme from any liability stemming from CEVA's cross-claims. *Id*. at 5-6. Frock, strongly advocated for Gardner to include such an indemnity provision in the settlement agreement. *Id*. For instance, Frock sent a letter to Gardner on August 3, 2011 urging Gardner to include an indemnity provision. *Id*. at 7. However, Gardner informed Frock and Acme that no indemnity clause would be included in the settlement agreement and allegedly pressured Frock into accepting the settlement without such a provision. *Id*. at 8. On September 16, 2011, the settlement agreement was finalized. *Id*. at 9.

Behind the scenes of these settlement negotiations and unbeknownst to Acme or Frock, on August 16, 2011, Hill Rivkins, the law firm representing Verizon, announced that Gardner would

join its Houston office as a partner on September 1, 2011. *Id*. at 7. Gardner continued negotiations with Frock and Acme in order to finalize the settlement even after joining Hill Rivkins. *Id*. at 8. On September 27, 2011, two weeks after execution of the settlement agreement, Gardner revealed to Acme and Frock that she had transferred employment to Hill Rivkins. *Id*. at 9.

In its second amended complaint, Acme asserts claims for breach of fiduciary duty and negligence against defendants for the alleged misconduct relating to Gardner's representation of Acme in the state lawsuit. Defendants filed their amended motion to dismiss under Rule 12(b)(6). Dkt. 26.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering Rule 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

In order to survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570, 127 S. Ct. 1955 (2007). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937 (2009). Though a complaint does not need detailed factual allegations, the "allegations must be enough to raise a right

3

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

#### A. Attorney-Client Privilege

Acme's claims largely hinge on whether an attorney client relationship exists between Gardner and Acme. Texas state law governs whether Acme and Gardner formed an attorney-client relationship. *Hopper v. Frank*, 16 F.3d 92, 95 (5th Cir. 1994). Under Texas law, the attorney-client relationship is a contractual relationship in which an attorney "agrees" to render professional services for a client. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (citation omitted). To establish the relationship, the parties must explicitly or by their conduct manifest an intention to create it. *Id.* In other words, "an attorney-client relationship may [ ] be formed by implied contract; that is, an agreement may be implied from actions that reveal the parties' intent to establish the relationship." *Century Res. Land L.L.C. v. Adobe Energy, Inc*, 82 F. App'x 106, 114 (5th Cir. 2003). To determine if there was an agreement or meeting of the minds one must use objective standards of what the parties said and did and not look to their subjective states of mind. *Vinson & Elkins*, 946 S.W.2d at 405. Therefore, the relevant inquiry for an implied attorney-client relationship is whether the parties' statements and actions objectively demonstrate a manifestation of intent to enter into the relationship. The formation of an attorney-client relationship is generally a question of fact. *In re Tex. Windstorm Ins. Ass'n*, 417 S.W.3d 119, 146 (Tex. App. —Houston [1st Dist.] 2013, orig. proceeding).

Applying the above standards relating to the formation of an attorney-client relationship to the facts as pleaded by Acme, the court finds sufficient factual allegations that, if true, could

establish an attorney-client relationship. The second amended complaint alleges that Gardner was engaged by Navigators on the cargo claim filed Acme as of July 1, 2009. After Verizon initiated suit against Acme on June 25, 2010, Gardner acted as Acme's sole legal counsel in the lawsuit until January 2011 when David Frock was appointed as Acme's defense counsel. Prior to Frock joining the litigation, Gardner and the Schindel law firm exchanged numerous documents with Acme, drafted correspondence for Navigators to send out on Acme's behalf, and entered into an agreement with opposing counsel for an extension of time to file Acme's answer to the lawsuit. Even after Frock joined the litigation, Gardner continued to actively participate in the lawsuit. Such actions included approving pleading and discovery documents drafted by Frock before such documents could be disseminated, sharing defense strategies, and conducting settlement negotiations. If true, these facts could objectively be construed as consistent with an intention to form an attorney-client relationship.

Defendants cite *Great American Insurance Company v. Christopher* to support their proposition that no attorney-client relationship can exist under these facts. 3:02-CV-2112-P, 2003 WL 21414676 (N.D. Tex. Jun. 13, 2003). In that case, the court held that there was no attorney-client relationship between an insured and counsel for the insurance company. *Id*. at *11. The court stated "the most significant fact is that [the insured] was represented by separate counsel at all times relevant to this motion." *Id*. Because Acme was not represented by separate counsel at all times relevant to this motion, the *Great American* case is not fully analogous.

## B. Statute of Limitations

Defendants also argue that Acme's malpractice claim is time barred by the statute of limitations.[1] The statute of limitations for legal malpractice is two years. TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001). The limitations period "generally begins to run when the cause of action accrues, which [the Texas Supreme Court] has determined means when the facts have come into existence that authorize a claimant to seek judicial remedy." *Apex Towing*, 41 S.W.3d at 121. "Texas law imposes two requirements for the accrual of a legal malpractice cause of action: (1) the commission of a tortious act and (2) the suffering of a legal injury." *Randolph v. Res. Trust Corp.*, 995 F.2d 611, 617 (5th Cir. 1993). However, the trigger date for the limitations period can be tolled by the discovery rule. *Apex Towing*, 41 S.W.3d at 121. The discovery rule protects plaintiffs from the statute of limitations until "the client discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of a cause of action." *Id.*

In this case, legal injury to Acme did not occur, at a minimum, until the date the settlement was finalized on September 16, 2011. *See Willis v. Maverick*, 723 S.W.2d 259, 262 (Tex. App.—San Antonio 1986, *aff'd* 760 S.W.2d 642) (holding legal injury in a malpractice claim to accrue "on the date that the Settlement Agreement was executed and entered . . ."); *see also*

---

[1] In Texas, the statute of limitations for legal malpractice is normally governed by a special rule first enunciated in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). "When an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on a malpractice claim against that attorney is tolled until all appeals on the underlying claim are exhausted or the litigation is otherwise finally concluded." *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 119 (Tex. 2001). However, the *Hughes* rule, just like the discovery rule, must be affirmatively pled because it is considered a plea in avoidance. *Haase v. Abraham Watkins Nichols Sorrels Agosto & Friend, L.L.P.*, 404 S.W.3d 75, 84-85 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Because the plaintiff has only pled the discovery rule, and not the specific *Hughes* rule, in its second amended complaint, the traditional rules governing the statute of limitations for negligence control.

*Manning v. Jenkins & Gilchrist, P.C.*, No. 08-00-00153-CV, 2001 WL 925738, at *10 (Tex. App.—El Paso Aug. 16, 2001, no pet.) (holding negligence causes of action relating to advice provided prior to a settlement agreement accrued on the date of the agreement). Ultimately, it was Gardner's action of failing to include the indemnity provision requested by Acme in the settlement agreement that allegedly constituted legal malpractice. Because this lawsuit was initiated on September 16, 2013, the complaint was filed within the statute of limitations.

### C. Remaining Claims

Defendants also argue that Acme's claims for fiduciary duty, exemplary damages, and respondent superior should also be dismissed. Defendants' theory for dismissal of these claims stems from the same argument that there was no attorney-client relationship between Acme and Gardner. Because the court has denied defendants' motion to dismiss on this point, the remaining requests for dismissal must also be denied.

### IV. CONCLUSION

Because Acme has pled sufficient facts to establish a plausible attorney-client relationship between Acme and Gardner and filed its complaint within the statute of limitations, defendants' amended motion to dismiss (Dkt. 26) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on December 9, 2014.

_____
Gray H. Miller
United States District Judge